**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
KING HO YIP and
ANNA HENNIGAN,
*on behalf of themselves and others similarly situated*

                                      **Case No: 17-cv-06464**

                        Plaintiffs,

                  v.

McDONALD'S CORP
        d/b/a McDonald's and
McDONALD'S USA., LLC
        d/b/a McDonald's

                        Defendants.
-----------------------------------------------------------x

> *"This ad is as simple as our New Artisan Grilled Chicken… No Preservatives… No Added Colors… No Artificial Flavors… No Kidding… Just Tender Juicy 100% Chicken Breast Fillet. Try McDonald's new Artisan Grilled Chicken, because Tastin' is Lovin'*
> *—McDonald's Ad.*

 

# NATIONWIDE CLASS ACTION COMPLAINT
# JURY TRIAL DEMANDED

---

TROY LAW, PLLC
*Attorneys for the Plaintiffs and proposed Rule 23 Class*
John Troy (JT 0481)
johntroy@troypllc.com
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel:   (718) 762-1324

Plaintiffs KING HO YIP and ANNA HENNIGAN (hereinafter referred to as "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Troy Law, PLLC, hereby bring this complaint against Defendants McDONALD'S CORP d/b/a McDonald's, a Delaware Corporation, and McDONALD'S USA., LLC d/b/a McDonald's, a Delaware Corporation (hereinafter "Defendants").

## <u>INTRODUCTION</u>

1. This action is brought by Plaintiffs KING HO YIP and ANNA HENNIGAN, on behalf of themselves on behalf of proposed class (the "Class"), as more fully defined below, of similarly situated consumers throughout the United States to redress the pervasive pattern of fraudulent, deceptive and otherwise improper advertising, sales, and marketing practices that Defendants continue to engage of the following products (hereinafter "Products") throughout the State of New York and throughout the country:

   a. **"100% CHICKEN BREAST FILLET SANDWICHES"** (hereinafter "Sandwich Products"):
      i. Plain:
         1. "Artisan Grilled Chicken Sandwich" (on artisan roll and on sesame bun);
         2. "Buttermilk Crispy Chicken Sandwich" (on artisan roll and on sesame bun);
      ii. With Guacamole:
         1. "Pico Guacamole with Artisan Grilled Chicken" (on artisan roll and on sesame bun);
         2. "Pico Guacamole with Buttermilk Crispy Chicken" (on artisan roll and on sesame bun);
      iii. With bacon:
         1. "Sweet BBQ Bacon with Artisan Grilled Chicken" (on "artisan roll and on sesame bun);
         2. "Sweet BBQ Bacon with Buttermilk Crispy Chicken" (on artisan roll and on sesame bun);
   b. **"100% CHICKEN BREAST FILLET SALADS"** (hereinafter "Salad Products")::

   i. With bacon:
     1. "Bacon Ranch Grilled Chicken Salad";
     2. "Bacon Ranch Salad with Buttermilk Crispy Chicken";
   ii. Southwest:
     1. "Southwest Grilled Chicken Salad"; and
     2. "Southwest Buttermilk Crispy Chicken Salad";
  c. **"100% CHICKEN BREAST FILLET WRAPS"** (hereinafter "Wrap Products")::
   i. Snack Wraps
     1. "Ranch Chicken Snack (Grilled)";
     2. "Ranch Chicken Snack (Crispy)";
   ii. McWraps
     1. Caesar
       a. "Caesar McWrap with Grilled Chicken";
       b. "Caesar McWrap with Buttermilk Crispy Chicken";
     2. With bacon
       a. "Premium McWrap Chicken & Bacon (Grilled)";
       b. "Premium McWrap Chicken & Bacon (Buttermilk Crispy)";
     3. With ranch
       a. "Premium McWrap Chicken & Ranch (Grilled)";
       b. "Premium McWrap Chicken & Ranch (Buttermilk Crispy)";
     4. Sweet Chili
       a. "Premium McWrap Sweet Chili Chicken (Grilled)"; and
       b. "Premium McWrap Sweet Chili Chicken (Buttermilk Crispy)".

2. Defendants' advertising and marketing campaign is false, deceptive and misleading because its "100% chicken breast filet" is not in fact "100% chicken breast," but rather includes rib meat in addition to chicken breast.

3. Plaintiffs and other similarly situated members ("Class Members") relied on Defendants' misrepresentations that its Products are in fact includes a "100% chicken breast fillet" when purchasing "100% chicken breast fillet" Sandwich and Wrap Products or chopped "100% chicken breast fillet" when purchasing Salad Products.

4. Plaintiffs and Class Members paid a premium for the Products over and above

comparable products that did not purport to include "100% chicken breast fillet" and cost considerably less than the Products.

5. Given that Plaintiffs and Class Members paid a premium for the Products based on Defendants' misrepresentations that they in fact include "100% chicken breast fillet," Plaintiffs and Class Members suffered an injury in the amount of premium paid for its Products.

6. This premium for Sandwich Products can be determined by finding the difference between the Sandwich Products (branded as "Signature Crafted" or McDonald's Premium Line) and inferior substitutes like McChicken Sandwich sold at McDonald's.

7. For Salad and Wrap Products, this premium can be approximated by taking the premium for Sandwich Products and weighing it by the cost of the Product.

8. As more fully alleged herein, Defendants' schemes or artifices to defraud Plaintiff and other members of the proposed Class consist of systemic and continuing practices of disseminating false and misleading information via television commercials, Internet, point of purchase advertisements and national print advertisements, all of which are intended to trick unsuspecting consumers, including Plaintiffs and other members of the proposed class, into believing that they are purchasing Products when in fact they were purchasing an inferior product, as its grilled "100% chicken fillet", whether artisan-grilled or buttermilk-crispy, include chicken rib meat, an inferior meat compared to chicken breast meat.

9. Each person who has purchased Defendants' Product, including the Plaintiffs, has been exposed to Defendants' misleading advertising message and purchased the

Product as a result of that advertising.

10. Plaintiffs bring this action on behalf of themselves and other similarly situated consumers throughout the United States to halt the dissemination of these false and misleading advertising messages, correct the false and misleading perception that they have created in the minds of consumers, and obtain redress for those who have purchased the Product.

11. Plaintiff alleges violations of the consumer fraud statutes of all fifty (50) states and the District of Columbia, as well as unjust enrichment under the laws of all fifty (50) states and the District of Columbia.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act. The proposed Class involves more than 100 individuals. A member of the proposed Class is a citizen of a state different from the Defendants, and the amount of controversy, in the aggregate, exceeds the sum of $5,000,000 exclusive of interest and costs. A member of the proposed Class is a citizen of a state different from the Defendants, and the amount of controversy, in the aggregate, exceeds the sum of $5,000,000 exclusive of interest and costs.

13. Venue is proper in this district under 28 U.S.C. §1391, because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## PLAINTIFFS

14. Plaintiff KING HO YIP is, and at all time relevant to this action has been, a

resident and citizen of New York.

15. Plaintiff ANNA HENNIGAN is, and at all time relevant to this action has been, a resident and citizen of New York.

## DEFENDANTS

### *Corporate Defendants*

16. Corporate Defendant McDONALD'S CORP d/b/a McDonald's is a domestic business corporation organized under the laws of the State of Delaware with a registered address at 251 Little Falls Drive, Wilmington, DE 19808 and with a principal business location at One McDonald's Plaza, Oak Brook, IL 60523.

17. At all relevant times, McDONALD'S CORP d/b/a McDonald's has done business in New York and other states and countries, principally operating fast-food restaurants and providing franchising services.

18. McDONALD'S CORP d/b/a McDonald's currently operates more than 36,500 fast-food restaurants.

19. Corporate Defendant McDONALD'S USA., LLC d/b/a McDonald's is a domestic business corporation organized under the laws of the State of Delaware with a registered address at 251 Little Falls Drive, Wilmington, DE 19808 and with a principal business location at One McDonald's Plaza, Oak Brook, IL 60523.

20. Corporate Defendant McDONALD'S USA., LLC d/b/a McDonald's is a wholly-owned subsidiary of McDONALD'S CORP d/b/a McDonald's that does business in New York and other states, principally operating and franchising fast-food restaurants and providing related services.

21. McDONALD'S USA., LLC d/b/a McDonald's develops, operates, franchises, and services restaurants that prepare, assemble, package and sell a limited menu of food.

22. Although McDonald's Restaurants are owned and/or operated by franchisees, Defendants create, maintain and enforces strict uniform standards and practices for all aspects of its McDonald's restaurants, including its food offerings and prices.

23. Defendants' actions were intended to and did lead Plaintiffs and members of the proposed Class to believe that all McDonald's restaurants had substantial similar standards and practices, and that all Product would be substantially same at each McDonald's restaurant.

24. Plaintiffs and members of the Class justifiably relied on Defendants' representations that the Product would be identical in all material respects at each point of distribution.

## STATEMENT OF FACTS

25. Whether Defendants' labeling of the Products as "100% chicken breast fillet" Sandwiches/ Salads/ Wraps is deceptive is judged by whether it would deceive or mislead a reasonable person.

26. The definition of "food" under the Federal Food, Drug, and Cosmetic Act ("FDCA"), includes "articles used for food or drink." 21 U.S.C. § 321(f). The FDCA strictly prohibits the "adulteration or misbranding" of food. 21 U.S.C. § 331. A food is misbranded if it has a label that is false and misleading in any particular. 21 U.S.C. § 343.

27. By contrast, a food is adulterated, among other things: (1) If any valuable constituent has been in whole or in part omitted or abstracted therefrom; or (2) if any substance

has been substituted wholly or in part therefor; or (3) if damage or inferiority has been concealed in any manner; or (4) if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight, or reduce its quality or strength, or make it appear better or of greater value than it is.

28. Federal regulations provide "standards of identity" for various foods. A food that "purports to be or is represented as" a food with a standard of identity, but which in fact does not conform to such a standard, is illegally misbranded. 21 CFR § 343(g).

29. Under federal law, "a food does not conform to the definition and standard of identity if it contains an ingredient for which no provision is made in such definition and standard, unless such ingredient is an incidental additive introduced at a nonfunctional and insignificant level . . . ." 21 CFR § 130.8.

30. A poultry "fillet" is a "food" with a standard of identity under 9 CFR Part 380.

31. In particular, it is defined by the United States Department of Agriculture as a "product [which] consists of a boneless slice or strip of poultry meat of the kind indicated", 9 CFR 381.162.

32. The kind of poultry must be specified on the label.

33. Ingredients which are not listed as optional or necessary under a standard of identity are not permitted to be included in products purporting to have that identity.

34. "Rib meat" is not listed as optional or necessary under the standard of identity of a "chicken breast fillet". Nor would a reasonable consumer believe that a product purporting to contain "100% chicken breast fillet" would include chicken rib meat. The inclusion of chicken rib meat in a product purporting to be "100% chicken breast fillet" therefore constitutes a violation of federal food labeling law.

35. Despite this fact, Defendants and their franchisees heavily market their Products as featuring "100% chicken breast fillet", and offers its Products in general at a premium as a superior product to its McChicken Sandwich.

36. A reasonable customer understands Defendants' "100% chicken breast fillet" claims to mean that the Products feature "100% chicken breast fillet", and not chicken fillet with chicken breast mixed with chicken rib meat.

37. The marketing of the Products as "100% chicken breast fillet" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendants' awareness that "100% chicken breast fillet" claims are material to consumers.

38. This is made clear in Defendants' marketing campaigns, including its TV commercials: "Simple", "Lovin' is All Around," and "Food Festival", and online.

39. In the commercials, Defendants intentionally misrepresent the nature of its Product as "100% chicken breast fillet."

40. In the commercial, "Simple[1]," on their Artisan Grilled Chicken, the female narrator announces: "This ad is as simple as our New Artisan Grilled Chicken… No Preservatives… No Added Colors… No Artificial Flavors… No Kidding… Just Tender Juicy 100% Chicken Breast Fillet. Try McDonald's new Artisan Grilled Chicken, because Tastin' is Lovin'."

41.  In the commercial, "Lovin' is All Around[2]," on their Buttermilk Crispy Chicken, the female host announces: "What are people gonna think about our new Buttermilk

---

[1] "McDonald's Artisan Grilled Chicken TV Commercial, 'Simple.'" Online video clip. *iSpot.tv.* Accessed Web. <https://www.ispot.tv/ad/7mFa/mcdonalds-artisan-grilled-chicken-simple >. 06 November 2017.
[2] "McDonald's Buttermilk Crispy Chicken TV Commercial, 'Lovin' is All Around.'" Online video clip. *iSpot.tv.* Accessed Web. < https://www.ispot.tv/ad/79F5/mcdonalds-buttermilk-crispy-chicken-lovin-is-all-around>. 06 November 2017.

Crispy Chicken? Let's find out!"

42. McDonald, the true creator of the new product, disguises as a food truck in its self-named "Undercover tasting" giving out free samples of its Buttermilk Crispy Sandwich to customers in Chicago Illinois.

43. Then, after several approving nods and comments, the host asks "So will you guys come back?" "Definitely." Before revealing that the "Buttermilk Crispy Chicken" can be found on the back side of the name card, at McDonald's.

44. To this, the food tasters are incredulous: "It's McDonald's?" "*What*?!" "Get out of here." "Seriously?"

45. The food tasters are incredulous precisely because they associated McDonald's with inferior "junk food," whereas the Buttermilk Crispy Chicken is clearly a superior product, as the caption next to the close-up of the Buttermilk Crispy Chicken underscores:



"Made with 100% Chicken Breast Filet, No Artificial Colors, Buttermilk."

46. In the commercial, "Food Festival[3]," also on its Buttermilk Crispy Chicken Sandwich, the male narrator says, after witnessing several happy food tasters at a

---

[3] "McDonald's Buttermilk Crispy Chicken TV Commercial, 'Food Festival.'" Online video clip. *iSpot.tv*. Accessed Web. < https://www.ispot.tv/ad/79eG/mcdonalds-buttermilk-crispy-chicken-sandwich-food-festival >. 06 November 2017.

food festival, that the sandwich "Made with juicy 100% chicken breast filet/ And marinated with real butter/ Covered with savory spices/ and fried to perfection." underscores:



"Made with 100% Chicken Breast Filet, No Artificial Colors, Buttermilk."

47. Online, Defendants further advertised its Products (including all the Products listed above) as being "made with 100% chicken breast filet", in spite of also listing as ingredients "chicken rib meat" in small print in an expandable ingredient section.

48. Plaintiffs were repeatedly exposed to and saw Defendants' advertisements and representations regarding Defendants' Product.

49. Plaintiff KING HO YIP regularly frequented McDonald's in downtown Flushing.

50. Plaintiff KING HO YIP preferred to order McDonald's Products because he was a consumer who prized the "100% chicken breast fillet".

51. On or about November 06, 2017, Plaintiff KING HO YIP purchased an "Pico Guacamole with Artisan Grilled Chicken" for $6.49, an Artisan Grilled Chicken for $5.59 and a Ranch Snack Wrap for $2.29 at the McDonald Restaurant #24198 136-61 Roosevelt Avenue, Flushing, NY 11355 upon the representation that what she purchased was "100% chicken breast fillet" sandwich, wrap, and salad.

52. Plaintiff KING HO YIP paid three dollar sixty cents ($3.60) premium for his

Signature Crafted "Artisan Grilled Chicken Sandwich" over the Classic McChicken

Sandwich, which costed $1.99.

53. Plaintiff ANNA HENNIGAN regularly frequented McDonald's in New York City.

54. Plaintiff ANNA HENNIGAN preferred to order McDonald's Products because she

was a health-conscious consumer who valued the "100% chicken breast fillet" over a

regular chicken meat, including chicken nuggets or the McChicken sandwich.

55. On or about November 06, 2017, Plaintiff ANNA HENNIGAN purchased an

"Artisan Grilled Sandwich" for $5.59, a Southwest Grilled Chicken Salad for $6.39

and a Ranch Snack Wrap for $2.29 at the McDonald Restaurant #02300 at 40-18

Main Street, Flushing, NY 11354 upon the representation that what she purchased

was "100% chicken breast fillet" sandwich, wrap, and salad.

56. Plaintiff ANNA HENNIGAN paid three dollar sixty cents ($3.60) premium for her

Signature Crafted "Artisan Grilled Chicken Sandwich" over the Classic McChicken

Sandwich, which costed $1.99.

## CLASS ACTION ALLEGATIONS

57. Plaintiffs bring this lawsuit, both individually and as a class action on behalf of

similarly situated purchasers of the McDonald's Products, including its Sandwiches,

Wraps, and Salads which purport to include "100% chicken breast fillet" pursuant

Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The proposed Class

is defined as:

> All persons in the United States who:
> (a) purchased a 100% Chicken Breast Fillet Sandwich, whether plain, with
> guacamole, or with bacon ("Artisan Grilled Chicken Sandwich" (on
> artisan roll and on sesame bun); "Buttermilk Crispy Chicken Sandwich"
> (on artisan roll and on sesame bun); "Pico Guacamole with Artisan Grilled

Chicken" (on artisan roll and on sesame bun); "Pico Guacamole with Buttermilk Crispy Chicken" (on artisan roll and on sesame bun); "Sweet BBQ Bacon with Artisan Grilled Chicken" (on artisan roll and on sesame bun); "Sweet BBQ Bacon with Buttermilk Crispy Chicken" (on artisan roll and on sesame bun));

(b) purchased a 100% Chicken Breast Fillet Salad, whether with bacon or southwest, ("Bacon Ranch Grilled Chicken Salad"; "Bacon Ranch Salad with Buttermilk Crispy Chicken"; "Southwest Grilled Chicken Salad"; and "Southwest Buttermilk Crispy Chicken Salad") and/or

(c) purchased a 100% Chicken Breast Fillet Wrap, including snap wrap (Ranch Chicken Snack (Grilled), Ranch Chicken Snack (Crispy)) and McWrap, whether Caesar, with bacon, with ranch or sweet chili ("Caesar McWrap with Grilled Chicken"; "Caesar McWrap with Buttermilk Crispy Chicken"; "Premium McWrap Chicken & Bacon (Grilled)"; "Premium McWrap Chicken & Bacon (Buttermilk Crispy)"; "Premium McWrap Chicken & Ranch (Grilled)"; "Premium McWrap Chicken & Ranch (Buttermilk Crispy)"; "Premium McWrap Sweet Chili Chicken (Grilled)"; and "Premium McWrap Sweet Chili Chicken (Buttermilk Crispy)".

Excluded from the proposed Class are Defendants, their respective officers, directors and employees, any entity that has a controlling interest in Defendants, and all of its respective employees, affiliates, legal representatives, heirs, successors, or assignees. Also excluded from membership in the Class is any Judge or Magistrate presiding over this action and members of their family. Any claims for personal injury or consequential damages, not otherwise permitted under the facts pled herein, are

58. Plaintiffs also seek certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

59. The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

60.  Plaintiffs reserve the right to amend the Class definition as necessary.

61. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

***Numerosity***

62. Upon information and belief, the Class comprises millions of consumers throughout the nation, and is so numerous that joinder of all members of the Class is impracticable. While the exact number of Class members is presently unknown and can only be ascertained through discovery, Plaintiffs believe that there are millions of Class members based upon the fact that McDonald's is one of the largest, if not the largest, fast-food franchises in the world, with over 36,500, and its Products are a popular item offered for sale by Defendants.

***Commonality***

63. There are questions of law and fact common to the Class, which predominate over any individual issues, including:

    a. Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b. Whether Defendants represented that its Product is "100% chicken breast fillet" as opposed to "chicken fillet";

    c. Whether Defendants charged a premium for its Product;

    d. Whether Defendants failed to disclose that its Product is in fact not "100% chicken breast fillet" but rather included "rib meat";

    e. Whether Defendants' claims regarding their Product are deceptive or misleading;

    f. Whether Defendants engaged in false, deceptive and/or misleading advertising;

g.  Whether Defendants' conduct as alleged herein violates the consumer fraud statutes of the various States and the District of Columbia;

h.  Whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss;

i.  Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief; and

j.  Whether Defendants were unjustly enriched.

*Typicality*

64. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

65. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent representing Plaintiffs in both class action and consumer fraud cases.

*Superiority*

66. A class action is superior to other available methods for the fair and efficient

adjudication of the controversy, particularly in the context of consumer fraud litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

67. Unless a class is certified, Defendant will retain monies received as a result of its conduct that was wrongfully taken from Plaintiff and proposed Class members.

Unless an injunction is issued, Defendant will continue to commit the violations alleged, and the members of the proposed Class and the general public will continue to be misled.

68. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violation of the Consumer Fraud and Deceptive Trade Practices Acts of the New York GBL §349 brought on behalf of Plaintiff and proposed New York subclass]**

69. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

71. The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendants, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

72. There is no adequate remedy at law.

73. Defendant misleadingly, inaccurately, and deceptively presents its Product to consumers.

74. Defendants' improper consumer-oriented conduct—including labeling and advertising the Products as "100% chicken breast fillet"—is misleading in a material way in that it, inter alia, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendants' Products and to consume the Products when they otherwise would not have. Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

75. Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendants' representations— not "100% chicken breast fillet." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

76. Defendants' advertising and Products' packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendants' Products and to pay a premium price for them.

77. Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

78. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and

costs.

## COUNT II.
### [False Advertising, Pursuant to the New York GBL §350
### brought on behalf of Plaintiff and proposed New York subclass]

79. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing

paragraphs as if fully set forth herein.

80. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in
> the furnishing of any service in this state is hereby declared unlawful.

81. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the
> kind, character, terms or conditions of any employment opportunity if
> such advertising is misleading in a material respect. In determining
> whether any advertising is misleading, there shall be taken into account
> (among other things) not only representations made by statement, word,
> design, device, sound or any combination thereof, but also the extent to
> which the advertising fails to reveal facts material in the light of such
> representations with respect to the commodity or employment to which the
> advertising relates under the conditions proscribed in said advertisement,
> or under such conditions as are customary or
> usual . . .

82. Defendant's labeling and advertisements contain untrue and materially misleading

statements concerning Defendant's Products inasmuch as they misrepresent that the

Products are "100% chicken breast fillet" when in fact they are instead chicken fillet

with chicken breast and rib meat, an inferior product.

83. Plaintiffs and the New York Subclass Members have been injured inasmuch as they

relied upon the labeling, packaging and advertising and paid a premium for the

Products which were—contrary to Defendant's representations—do not include

"100% chicken breast fillet". Accordingly, Plaintiffs and the New York Subclass Members received less than what they bargained and/or paid for.

84. Defendant's advertising, packaging and products' labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products.

85. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

86. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

87. Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' labeling.

88. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

89. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**COUNT III.**
**[Violation of the Consumer Fraud and Deceptive Trade Practices Acts of the Various States and District of Columbia brought on behalf of Plaintiff and proposed class]**

90. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

91. Plaintiffs bring Count I individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

    a. the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*;

    b. the Alaska Unfair Trade Practices and Consumer Protection Act, AS §45.50.471, *et seq.*;

    c. the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

    d. the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

    e. the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq.* and 17500 *et seq.*; and the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;

    f. the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

    g. the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

    h. the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

    i. the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

    j. the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

    k. the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

    l. the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

    m. the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

    n. the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

    o. the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*;

    p. the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code

Ann. § 714H.1, *et seq.*;

q. the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

r. the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

s. the Louisiana Unfair Trade Practices and Consumer Protection Law, LSAR.51:1401, *et seq.*;

t. the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

u. the Maryland Consumer Protection Act, MD Code, Commercial Law, §13-301, *et seq.*;

v. the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

w. the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

x. the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

y. the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*

z. the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

aa. the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq.*;

bb. the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq.*;

cc. the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*;

dd. the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq.*;

ee. the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

ff. the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

gg. the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq.*;

hh. the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq.*;

ii. the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq.*;

jj. the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

kk. the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq.*;

ll. the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*;

mm. the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

nn. the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

oo. the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

pp. the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

qq. the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;
rr. the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

ss. the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

tt. the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

uu. the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

vv. the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

ww. the West Virginia Consumer Credit and Protection Act, W.Va.Code §46A-1-101, *et seq.*;

xx. the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

yy. the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

92. Defendant's foregoing misrepresentations and omissions regarding the nature of its

Product, are deceptive and/or unfair acts or practices prohibited by the consumer fraud

statutes set forth above.

93. Defendant intended to be deceptive and/or unfair to Plaintiff and the proposed Class by intentionally making the foregoing false and misleading statements and omitting accurate statements as alleged above, because had Defendant provided accurate information, Plaintiff and the proposed Class members would not have purchased the the Product and paid a premium price for the Product.

94. Defendants' practice of creating, approving and distributing advertising for the Products that contained false and misleading representations regarding the nature of its Product for the purpose of selling them to Plaintiff and the proposed Class, as alleged in detail *supra*, is both an unfair act and deceptive practice prohibited by the foregoing statutes.

95. Defendant intended to be deceptive and unfair to Plaintiff and the proposed Class by unlawfully representing that its Product is 100% chicken breast fillet when the standard of identity established by the USDA suggests that no additional meat other than the one qualifying "fillet" may be added.

96. Defendant's intent deceive is evidenced by, *inter alia*, its heavy reliance on the term "100% chicken breast fillet" in its retail, online, and commercial advertisement of its Product as something distinctly *not* McDonald's-like, rather hip rather than junk food.

97. Defendant intended that Plaintiffs and the proposed Class members rely on Defendant's misrepresentations as to the nature of its Product (as "100% chicken breast fillet"), and Defendant omitted to disclose to or notify Plaintiffs and the proposed Class that the in fact its product features "chicken rib meat" as well.

98. Plaintiffs and the proposed Class members justifiably relied on the misrepresentations and omissions to their detriment by purchasing the Products after seeing Defendant's advertising. Indeed, Defendant made no attempt to inform consumers that the Products are mislabeled.

99. Had Plaintiffs and the proposed Class members known the truth, they would not have purchased the Products at a premium.

100.   The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the sale of the Product to Plaintiffs and the proposed Class members.

101.   Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## COUNT IV.
### [Unjust Enrichment
### brought on behalf of Plaintiff and proposed Class]

102.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

103.   Plaintiffs bring this claim individually, and on behalf of all similarly situated residents in and under the unjust enrichment laws of each of the 50 states and the District of Columbia.

104.   As a direct and proximate result of Defendant's misconduct as set forth above,

Defendant has been unjustly enriched.

105.   Specifically, by its misconduct described herein, Defendant has accepted a benefit (i.e., monies paid by Plaintiffs and the proposed Class members for the purchase of the Product, at a premium of its Classic line of sandwiches) to the detriment of Plaintiff and the proposed Class.

106.   Defendant's retention of the full amount of monies paid for its Products violates the fundamental principles of justice, equity, and good conscience.

107.   Defendant accepted the benefit based on its misrepresentations and omissions regarding the its Product to the Plaintiff and the proposed Class members, and it would be inequitable for the Defendant to retain the benefit of those monies, as it was paid the money under false pretenses.

108.   Defendant has obtained money to which it is not entitled, and interest on that money, and under these circumstances equity and good conscience require that the Defendant return the money with interest to the Plaintiff and the proposed Class.

109.   As a direct and proximate result of the foregoing, Plaintiff and the proposed Class have been damaged in an amount to be determined at trial.


**COUNT V.**
**[Breach of Express Warranty**
**brought on behalf of Plaintiff and proposed Class]**

110.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

111.   Defendants provided Plaintiffs and other members of the Class with written express warranties including, but not limited to, warranties that the Products included "100%

chicken breast fillet".

112.    These affirmations of fact or promises by Defendants relate to the goods and became part of the basis of the bargain.

113.    Plaintiff and members of the Class purchased Products believing them to conform to the express warranties.

114.    Defendants breached these warranties. This breach resulted in damages to Plaintiff and other members of the Class, who bought Defendant's Product but did not receive the goods as warranted.

115.    Defendants breached the following state warranty laws:

> a. Alabama. Code § 7-2-313;
>
> b. Alaska Stat. Ann. § 45.02.313;
>
> c. Arizona Rev. Stat. Ann. § 47-2313;
>
> d. Arkansas Code Ann. § 4-2-313;
>
> e. California Com. Code § 2313;
>
> f. Colorado Rev. Stat. Ann. § 4-2-313;
>
> g. Connecticut Gen. Stat. Ann. § 42a-2-313;
>
> h. Delaware Code Ann. Tit. 6, § 2-313;
>
> i. District of Columbia Code Ann. § 28:2-313;
>
> j. Florida Stat. Ann. § 672.313;
>
> k. Georgia Code Ann. § 11-2-313;
>
> l. Hawaii Rev. Stat. Ann. § 490:2-313;
>
> m. Idaho Code Ann. § 28-2-313;
>
> n. 810 Illinois Comp. Stat. Ann. 5/2-313;

o. Indiana Code Ann. § 26-1-2-313;

p. Iowa Code Ann. § 554.2313;

q. Kansas Stat. Ann. § 84-2-313;

r. Kentucky Rev. Stat. Ann. § 355.2-313;

s. Louisiana Civ. Code Ann. Art. 2520;

t. Maine Rev. Stat. Ann. Tit. 11, § 2-313;

u. Maryland Code Ann., Com. Law § 2-313;

v. Massachusetts Gen. Laws Ann. Ch. 106, § 2-313;

w. Michigan Comp. Laws Ann. § 440.2313;

x. Minnesota Stat. Ann. § 336.2-313;

y. Mississippi Code. Ann. § 75-2-313;

z. Missouri Ann. Stat. § 400.2-313;

aa. Montana Code Ann. § 30-2-313;

bb. Nebraska Rev. Stat. Ann. § UCC § 2-313;

cc. Nebraska Rev. Stat. Ann. § 104.2313;

dd. New Hampshire Rev. Stat. Ann. § 382-A:2-313;

ee. New Jersey Stat. Ann. § 12a:2-313;

ff. New Mexico Stat. Ann. § 55-2-313;

gg. New York U.C.C. Law § 2-313;

hh. North Carolina Gen. Stat. Ann. § 25-2-313;

ii. North Dakota Cent. Code Ann. § 41-02-30;

jj. Ohio Rev. Code Ann. § 1302.26;

kk. Oklahoma Stat. Ann. Tit. 12a, § 2-313;

ll. Oregon Rev. Stat. Ann. § 72.3130;

mm. 13 Pennsylvania Stat. And Cons. Stat. Ann. § 2313;

nn. Rhode Island Gen. Laws Ann. § 6a-2-313;

oo. South Carolina Code Ann. § 36-2-313;

pp. South Dakota Codified Laws § 57a-2-313;

qq. Tennessee Code Ann. § 47-2-313;

rr. Texas Bus. & Com. Code Ann. § 2.313;

ss. Utah Code Ann. § 70a-2-313;

tt. Vermont Stat. Ann. Tit. 9a, § 2-313;

uu. Virginia Code Ann. § 59.1-504.2;

vv. Washington Rev. Code Ann. § 62a.2-313;

ww. West Virginia Code Ann. § 46-2-313;

xx. Wisconsin Stat. Ann. § 402.313; and

yy. Wyoming Stat. Ann. § 34.1-2-313.

116.    As a proximate result of the breach of warranties by Defendant, Plaintiff and the other members of the Class did not receive goods as warranted. Plaintiff and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they would not have purchased the Product, or would have purchased Product on different terms.

117.    As a direct and proximate result of the foregoing, Plaintiff and the proposed Class

have been damaged in an amount to be determined at trial.

## COUNT VI.
**[Violation of the Magnuson-Moss Warranty Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.* brought on behalf of Plaintiff and proposed Class]**

118.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

119.   Plaintiff brings this claim on behalf of the other members of the Class for violation of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.* (the "Magnuson-Moss Act").

120.   Upon certification, the Class will consist of more than 100 named Plaintiffs.

121.   The Magnuson-Moss Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the Magnuson-Moss Act], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal equitable relief." 15 U.S.C. § 2310(d)(1).

122.   At all relevant times, Plaintiff and Class members were "consumers" as that term is defined in 15 U.S.C. § 2301 (3).

123.   At all relevant times, Defendant was a "supplier," as that term is defined in 15 U.S.C. § 2301(4), because it was a "person engaged in the business of making a consumer product directly or indirectly available to consumers."

124.   At all relevant times, Defendant was a "warrantor," as that term is defined in 15 U.S.C. §2301(5), because it was a "supplier or other person who gives offers to give a written warranty or who is or may be obligated under an implied warranty."

125.   The Products that Plaintiff and the Class members purchased were "consumer products," as that term is defined in 15 U.S.C. § 2301(6), because the Products were "tangible personal property which is distributed in commerce and which is normally used or personal, family, or household purposes."

126.   By reason of Defendant's breach of its express warranties regarding the ability of the Products to be "100% chicken breast fillet" Defendant has caused economic damage to Plaintiff and the Class members and has violated the statutory rights due to them under the Magnuson-Moss Act.

127.   As a direct and proximate result of the foregoing, Plaintiff and the proposed Class have been damaged in an amount to be determined at trial.


**COUNT VII.**
**[Negligent Misrepresentation**
**brought on behalf of Plaintiff and proposed Class]**

128.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

129.   Defendants, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the class.

130.   In making the representations of fact to Plaintiffs and members of the class described herein, Defendants have failed to fulfill their duty to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

131.   Defendants, in making the misrepresentations and omissions, and in doing the acts

alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiff and members of the class.

132.    Plaintiffs and members of the class relied upon these false representations and nondisclosures by Defendants when purchasing the Products, which reliance was justified and reasonably foreseeable.

133.    As a result of Defendant's wrongful conduct, Plaintiff and members of the class have suffered and continue to suffer economic loses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at the time of trial.

134.    As a direct and proximate result of the foregoing, Plaintiff and the proposed Class have been damaged in an amount to be determined at trial.

## COUNT VIII.
### [Breach of Implied Warranty of Merchantability brought on behalf of Plaintiff and proposed Class]

135.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

136.    Defendant is in the business of manufacturing, distributing, marketing and advertising the above listed products.

137.    Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to Plaintiff and Class Members that the Products include "100% chicken breast fillet."

138.   Defendant breached the implied warranty of merchantability in that Defendant's Products' ingredients deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendant's Products if they knew that they actually contained both chicken rib meat and chicken breast meat.

139.   The inability of the Defendant's Products to meet the label description was wholly due to the Defendant's fault, and was solely due to the Defendant's manufacture and distribution of the Products to the public.

140.   As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## COUNT IX.
### [Breach of Implied Warranty of Fitness
### brought on behalf of Plaintiff and proposed Class]

141.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

142.   Defendant knew or had reason to know that the Plaintiff and other Class Members were buying its Products with the specific purpose of buying products that contained premium "100% chicken breast fillet."

143.   Plaintiff and the other Class Members, intending to eat a premium meat product, relied on the Defendant in selecting its Products to fit their specific intended use.

144.   Defendant held itself out as having particular knowledge of the Defendant's Products' ingredients.

145.   Plaintiff's and Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular purpose was reasonable given Defendant's claims and representations in its advertising, packaging and labeling concerning the Products' ingredients.

146.   Plaintiff and the other Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular use was reasonable given Defendant's particular knowledge of the Products it manufactures and distributes.

147.   As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, and on the behalf of the Class, respectfully requests that this Court enter a judgment providing the following relief:

a)    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

b)    Designating Plaintiff as representative of the Class, and her undersigned counsel as Class Counsel;

c)    Entering judgment in favor of Plaintiff and the Class and against Defendant;

d)    Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

e)    Awarding Plaintiff and the Class restitution and any other equitable relief that may be appropriate;

f)      Awarding Plaintiff and the Class their actual damages, treble damages, punitive damages, attorney's fees and costs, including interest thereon, as allowed or required by law;

g)      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

h)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: Flushing, New York
November 7, 2017

TROY LAW, PLLC
*Attorneys for the Plaintiffs,, and potential Rule 23 Class*

  /s/ John Troy
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com